UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| "J.Q. DOE",<br><br>Plaintiff,<br><br>v.<br><br>ANDREA LYNNE BENOIT, et al.,<br><br>Defendants. | Civil Action No. 19-1253 DLF |

MOTION TO DISMISS IN PART AND TO STRIKE

The named Defendants,[1] through undersigned counsel, respectfully move

pursuant to Rules 8 and 12(b)(1), (2), (3), (4), (5) and (6) of the Federal Rules of Civil

---

[1] The named defendants are: Andrea Benoit (plaintiff's former supervisor), Secretary of Defense Mark T. Esper (in his official capacity), and the Department of Defense ("DoD").  Plaintiff has also initiated action against "John Does Nos. 1-10", described as "believed to be DCMA officials and employees and are anonymously described in this action in their individual capacities."  Second Amended Compl., ¶ 5.

Undersigned counsel do not represent these "John Does" who have not been served and as to whom the individual-capacity claims would be subject to dismissal for some or all of the reasons that Count V is subject to dismissal as to Defendant Benoit.  28 U.S.C. § 517 states that "any officer of the Department of Justice[] may…attend to the interests of the United States in a suit pending in a court of the United States."  This statute confers broad and unreviewable discretion on the Department.  *See Falkowski v. EEOC*, 783 F.2d 252, 253 (D.C. Cir.) (per curium), *cert. denied*, 478 U.S. 1014 (1986).  Moreover, it is not necessary for the United States to enter an appearance for a named party to submit a Statement of Interest.  *See, e.g., Weixum v. Xilia*, 568 F. Supp. 2d 35 (D.D.C. 2008) (statement of interest regarding suit against former official of the People's Republic of China).  As authorized by Section 517, this Statement of Interest, regarding the claims against Doe defendants is being filed solely on behalf of the United States to further the orderly administration of justice; it is not intended as an entry of appearance for any of those defendants.  Accordingly, nothing contained herein should be construed as a waiver or other limitation of any defenses available to the Doe defendants, including, without limitation, immunity from suit, lack of personal jurisdiction, insufficiency of service of process, failure to state a claim upon which relief can be granted, and failure to complete service of process in a timely manner.

Procedure ("Fed. R. Civ. P."), to dismiss Counts III, IV and V of the Second Amended Complaint ("2nd Am. Compl.") in this action (ECF No. 29).[2]  In addition, they move, pursuant to Fed. R .Civ. P. 12(f), to strike as immaterial, impertinent and/or scandalous those paragraphs of the Second Amended Complaint which are subject to dismissal, which relate to Counts IV and V (dismissed by stipulation) (ECF No. 14) and other paragraphs that have no bearing on the claims that remain.[3]  Defendant continues to process documents responsive to Plaintiff's Freedom of Information Act ("FOIA") requests and proposes to address those issues after processing of the requested materials has been completed.

---

[2]  What will remain are Plaintiff's claims under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(a).  The Department of Defense continues its efforts to process documents under the FOIA.

[3]  Specifically, Defendants ask that the Court strike the following paragraphs as immaterial:  4-5, 7-204, 224-300.  Defendants submit that dismissal of Counts II, IV and V will mean that these paragraphs will have no significance to the remaining Freedom of Information Act claims.   Regardless of the dismissal of those counts, paragraphs 20-145 should be stricken, because they recount irrelevant and often scandalous material unrelated to any claim or any issue.

A memorandum of supporting points and authorities accompanies this motion. A

proposed order is attached.

Respectfully submitted,

JESSIE K. LIU, DC Bar #472845
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| "J.Q. DOE", | |
| Plaintiff, | |
| v. | Civil Action No. 19-1253 DLF |
| ANDREA LYNNE BENOIT, et al., | |
| Defendants. | |

MEMORANDUM OF SUPPORTING POINTS AND AUTHORITIES
IN SUPPORT OF MOTION TO DISMISS IN PART AND TO STRIKE

INTRODUCTION

According to the allegations in the Complaint, Plaintiff was working for the Department of Defense and was supervised by Defendant Andrea Benoit in Massachusetts until May 2016, when Plaintiff received a transfer to Virginia.  *See* 2nd Am. Compl., ¶¶ 111-137.  None of the events involving Plaintiff or Ms. Benoit took place in this district.  Declaration of Andrea Benoit ("Benoit Decl."), ¶¶ 1-7.  Plaintiff alleges that her supervisor (Defendant Benoit) was informed by Plaintiff's coworkers that Plaintiff had engaged in workplace intimidation, that Plaintiff believed a co-worker had mentioned Plaintiff's name in a telephone call that included a discussion about "incompetent legal representation" and in response Plaintiff had sent one or more emails seen as threatening by Plaintiff's co-workers.  2nd Am. Compl., ¶¶ 146-161.  Plaintiff complains that under the then-operative DCMA Instruction 563 her supervisor felt it necessary to report Plaintiff's conduct as a potential insider threat.  2nd Am. Compl., ¶¶ 218-221.  Plaintiff acknowledges that the instruction is no longer operative, but nevertheless seeks to have the Court assess whether the instruction failed to abide by the

appropriate Executive Order (E.O. 13,587) because it considered "intimidating behavior" and "conflicts with supervisors" to be indicia of insider threats and did not, in Plaintiff's view, adequately allow for her actions in complaining to her supervisors.  2nd Am. Compl.  at 2, ¶¶ 164-166, 159 (second)[4] - 161 (second), 167, 182.

Plaintiff admits, however, that the review she was accorded resulted in the government concluding that Plaintiff was not an insider threat.  2nd Am. Compl. at 1, ¶¶ 182-183.  Plaintiff further concedes that, although her access to a government facility in Manassas, VA, may have been temporarily curtailed, she has since had her access restored.  2nd Am. Compl., ¶¶ 171, 181, 191.  In short, the correctness or incorrectness of DCMA Instruction 563 is a moot issue since it has been replaced with DCMA Manual 3301-05, a document about which Plaintiff does not complain.  2nd Am. Compl., ¶¶ 202-204.  Whether or not the earlier document afforded the appropriate degree of protection to Plaintiff was also an issue rendered moot by the determination reflected in her pleadings that she was found not to be an insider threat.  2nd Am. Compl. at 1, ¶¶ 182-183.  Moreover, to the extent that Plaintiff wishes to base her claim on the language in Executive Order 13,587 (see 2nd Am. Compl., ¶¶ 218-220), she may not prevail because the Executive Order specifically provides that it does not create any right or benefit enforceable at law or in equity by any party.  Executive Order 13,587, § 7(i), 76 Fed. Reg. 63811, 63813, 2011 WL 5041305 (October 7, 2011).

---

[4] Following paragraph 166 of Plaintiff's pleading, there appear three paragraphs that are numbered 159, 160 and 161.  2d Am. Compl. at 21.  These are referred to herein as paragraphs 159 (second), 160 (second) and 161 (second).

As reflected herein, Plaintiff, through her counsel, has previously agreed to dismiss the baseless *Bivens*[5] claims with prejudice in return for Defendants' agreement not to oppose the filing of an amended complaint on a date agreeable to Plaintiff (*see* Stipulation of Partial Dismissal (ECF No. 14)), and Plaintiff should not now be heard to reinstitute them.[6]  The *Bivens* claims are, nevertheless, subject to dismissal for lack of personal jurisdiction, improper venue, failure to state a claim (particularly in light of the qualified immunity doctrine), and because the Supreme Court's instructions in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), leave no room for creating these novel claims where special factors and other remedies are available.

LEGAL STANDARDS

A.  <u>Rule 12(b)(1)</u>

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction…"  *Kokkenen v. Guardian Lie Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Gen. Motors Corp. v. E.P.A.* 363 F.3d 442, 448 (D.C. Cir. 2004) ("As a court of limited jurisdiction, we begin, and end, with the examination of jurisdiction.").  It is the plaintiff's burden to establish that the court has subject matter jurisdiction.  *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 561 (1992).

Because subject matter jurisdiction focuses on the Court's power to hear a claim, the Court must give the plaintiff's factual allegations closer scrutiny than would be

---

[5] *See Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[6] This is particularly true where Counsel for Plaintiff has admitted that this Court will have no choice but to dismiss the *Bivens* claims under binding precedent.  *See* Exhibit 1 at 2 ("we know that a trial court must dismiss *Bivens* counts based on precedent. . ." (citing [*Schweiker v.*] *Chilicky*, [487 U.S. 412, 425 (1988)]).

required in deciding a Rule 12(b)(6) motion for failure to state a claim.  *See Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  Thus, the Court is not limited to the allegations contained in the complaint.  *See Wilderness Soc. v. Griles*, 824 F.2d 4, 16 n.10 (D.C. Cir. 1987).

B.  Rule 12(b)(6)

The Federal Rules of Civil Procedure require that a complaint contain "a short and plain statement of the claim" in order to give the defendant fair notice of the claim and the grounds upon which it rests.  Rule 8(a)(2); *accord Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam).  A motion to dismiss under Rule 12(b)(6) does not test a plaintiff's ultimate likelihood of success on the merits; rather, it tests whether a plaintiff has properly stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  When considering a Rule 12(b)(6) motion for failure to state a claim, the Court "must accept as true all material allegations of the complaint, drawing reasonable inferences from those allegations in plaintiff's favor."  *LaRoque v. Holder*, 650 F.3d 777, 785 (D.C. Cir. 2011).

It is not necessary for the plaintiff to plead all elements of a *prima facie* case in the complaint.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-14 (2002); *Bryant v. Pepco*, 730 F. Supp. 2d 25, 28-29 (D.D.C. 2010).  Nevertheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Plaintiff's allegations simply do not suffice to state a claim, because actual involvement is needed to allege liability.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)

4

("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution."); *Int'l Action Ctr. v. United States*, 365 F.3d 20, 28 (D.C. Cir. 2004) (quoting *Jones v. City of Chicago*, 856 F.2d 985, 998 (7th Cir. 1988)) ("A supervisor who merely fails to detect and prevent a subordinate's misconduct, therefore, cannot be liable for that misconduct. 'The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see.'"); *see also Hampton v. Comey*, No. 16-5058, Mem. Op. (D.C. Cir. Feb. 2, 2017) (granting summary affirmance).

This means that a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)". *Twombly*, 550 U.S. 555-56 (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are therefore insufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *See Twombly*, 550 U.S. at 555.

In determining whether complaints fail to state a claim, the Court may consider the facts alleged in the complaint, any documents attached or incorporated in the Complaint, and matters of which the Court can take judicial notice. Fed. R. Evid. 201; *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). The Court may take judicial notice of public documents without converting Defendant's Motion to Dismiss into a motion for summary judgment. *Vasser v. McDonald*, 228 F.

Supp. 3d 1, 10 (D.D.C. 2016).  Federal courts regularly take judicial notice of government documents and documents from other reliable sources available on the Internet. *Id.; see also Grimes v. Navigant Consulting, Inc.*, 185 F. Supp. 2d 906, 913 (N.D. Ill.), vacated and remanded on other grounds, 536 U.S. 920 (2002) (taking judicial notice of historical stock prices from Yahoo!Finance) (*citing Austin v. American Ass'n of Neurological Surgeons*, 253 F.3d 967, 971 (7th Cir. 2001)); *Cali v. East Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 287 (E.D.N.Y. 2001) (taking judicial notice of Web-based corporate documents and documents from Pennsylvania state agencies and FAA); *McLaughlin v. Volkswagen of Am., Inc.*, No. 00-3295, 2000 U.S. Dist. LEXIS 17505 at *10 n.3 (E.D. Pa. Dec. 6, 2000) (taking judicial notice of NHTSA website description of automobile recall); *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1216 (C.D. Cal. 2000) (taking judicial notice of content on Warhol Museum's Web pages), aff'd, 292 F.3d 1139 (9th Cir. 2002); *Modesto Irrigation Dist. v. Pacific Gas & Elec. Co.*, 61 F. Supp. 2d 1058, 1066 (N.D. Cal. 1999) (taking judicial notice of FERC documents available on Internet); *Myers Investigative & Sec. Servs.*, 47 Fed. Cl. 288, 297 (Fed. Cl. 2000) (taking judicial notice of documents from Social Security Administration Website).

"District courts may refer to materials outside the pleadings in resolving a 12(b)(6) motion.  But when they do, they must also convert the motion to dismiss into one for summary judgment." *Kim v. United States*, 632 F.3d 713, 719 (D.C. Cir. 2011) (citing Rule 12(d)); *see also Yates v. District of Columbia*, 324 F.3d 724, 725 (D.C. Cir. 2003) (motion to dismiss under Rule 12(b)(6) converted to summary judgment motion

under Rule 56 where parties submitted and magistrate judge considered matters outside the pleadings).

## ARGUMENT

### The Bivens Claims Are Subject To Dismissal

### Lack of Personal Jurisdiction

A. Rule 12(b)(2)

When a defendant files a motion to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of establishing personal jurisdiction. *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006). Specifically, the plaintiff must allege specific facts upon which personal jurisdiction can be based and cannot rely on conclusory allegations. *Id.* A court in the District of Columbia may only assert personal jurisdiction over a defendant if it is permitted by D.C. law. *Pollack v. Meese*, 737 F.Supp. 663, 665 (D.D.C. 1990). For defendants who do not reside within or maintain a principal place of business in the District of Columbia, the District's long-arm statute is the only basis for obtaining personal jurisdiction. *Reuber v. United States*, 750 F.2d 1039, 1049 (D.C. Cir. 1984). Plaintiff asserts purported claims against Defendant Benoit (and others) in an individual capacity under *Bivens*, but the Court should dismiss such claims against the non-resident Defendants for lack of personal jurisdiction. Because *Bivens* suits are brought against government officials in their individual, rather than official capacities, personal jurisdiction over the individual defendants is required to maintain a *Bivens* claim. *See Robertson v. Merola*, 895 F. Supp. 1, 3 (D.D.C. 1995); *Deutsch v. U.S. Dept. of Justice*, 881 F. Supp. 49, 52 (D.D.C. 1995), *aff'd*, 93 F.3d 986 (D.C. Cir. 1996). Plaintiff has the burden of establishing a factual basis for the exercise

of personal jurisdiction over the defendant and cannot rely on conclusory allegations. *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990); *First Chicago Intern v. United Exchange Co.*, 836 F.2d 1375, 1378-79 (D.C. Cir. 1988); *Walton v. Bureau of Prisons*, 533 F. Supp. 2d 107, 112 (D.D.C. 2008); *Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006).  In order for the United States District Court for the District of Columbia to have personal jurisdiction over a nonresident defendant, jurisdiction must be proper under both the District of Columbia long-arm statute and consistent with the constitutional requirements of due process.  *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000); *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995); *Crane v. Carr*, 814 F.2d 758, 762 (D.C. Cir. 1987).  Plaintiff satisfies neither requirement.  *See Palmieri v. United States*, 72 F. Supp. 3d 191, 204-05 (D.D.C. 2014), *aff'd,* 896 F.3d 579 (D.C. Cir. 2018).

### i.   D.C. Long Arm Statute §13-423

As there is no applicable federal long-arm statute, this Court's power to exercise personal jurisdiction over the out-of-state Defendants is fixed by District of Columbia law.  *United States v. Ferrara*, 54 F.3d 825, 828 (D.C. Cir. 1995).  Thus, the District of Columbia's long-arm statute is the only basis upon which personal jurisdiction may be obtained over defendants who do not reside within or maintain a principle place of business in the District of Columbia.  *Meyer v. Reno*, 911 F. Supp. 11, 14 (D.D.C. 1996). The statute authorizes a District of Columbia Court to exercise personal jurisdiction over a person as to a claim for relief arising from the persons:

(1)  transacting business in the District of Columbia;
(2)  contracting to supply services in the District of Columbia;
(3)  causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5) Having interest in, using, or possessing real property in the District of Columbia;

(6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing; or

(7)  martial or parent and child relationship in the District of Columbia.

D.C. Code § 13-423(a).

Here, Plaintiff has not alleged any of the aforementioned grounds for personal jurisdiction over the out-of-state Defendants.  Plaintiff, for instance, has not alleged that Defendant Benoit transacted any business in the District of Columbia, nor does the 2nd Amended Complaint allege that any tortious injury occurred here.  Plaintiff appears to have alleged issues during her time working in either Massachusetts or Virginia.  2nd Am. Compl., ¶¶ 4, 23, 29, 33,  56,  136, 171, 175-176; Benoit Decl., ¶¶ 1-7.  As the D.C. Circuit has held, personal jurisdiction based upon the District's long-arm statute "is limited to claims arising from the particular transaction of business in the District." *World Wide Minerals, Ltd. v. Rep. of Kazakhastan*, 296 F.3d 1154, 1168 (D.C. Cir. 2002) (citing *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981); *Naarex Consulting Corp. v. Watt*, 722 F.2d 799, 785-86 (D.C. Cir. 1983)).  A persistent course of conduct may constitute a transaction of business for the assertion of personal jurisdiction only if the persistent conduct is undertaken in that person's individual capacity rather than in an official capacity conducting business for his or her employer.  *See Richard v. Bell Atlantic Corp.* 976 F. Supp. 40, 49-51 (D.D.C. 1997); *Pollack v. Meese*, 737 F. Supp. at 666.

In *Pollack*, this Court found that it lacked personal jurisdiction over the Bureau of

Prisons Director and Attorney General who resided in Virginia and worked as employees

of the Department of Justice in the District of Columbia because these defendants did not

transact their individual business in the District of Columbia or maintain their private

places of business in the District of Columbia.  *See Pollack*, 737 F. Supp. at 665-66.

Thus, Plaintiff has failed to meet his burden of establishing proper personal jurisdiction in

the United States District Court for the District of Columbia under section 13-423.  The

alleged injuries of which Plaintiff complains occurred in Virginia or possibly

Massachusetts.  Therefore, the Court lacks personal jurisdiction over the out-of state

Defendants.

ii.   Jurisdiction Would Conflict with Due Process

Plaintiff has also failed to allege facts showing that the exercise of personal

jurisdiction over the individual defendants in this case would satisfy due process

requirements.  In fact, Plaintiff does not establish any connection between the individual

defendants as individuals and the District of Columbia.  Subjecting such out-of-state

defendants to this Court's jurisdiction conflicts with due process considerations,

particularly where Plaintiff seeks to have this Court subject the defendants to a judgment

of money damages in their individual capacity.   Absent the requisite minimum contacts,

such an exercise of personal jurisdiction would offend "traditional notions of fair play

and substantial justice."  *International Shoe v. Washington*, 326 U.S. 310, 316 (1945);

*Meyer v. Federal Bureau of Prisons*, 940 F. Supp. 9, 12 (D.D.C. 1996).

"Plaintiff's claim for relief must arise from the defendants' contacts with the

District of Columbia and his 'claims must bear some relation to the acts in the District

that are relied upon to confer personal jurisdiction." *Wiggins v. Equifax*, 853 F. Supp. 500, 502 (D.D.C. 1994) (citations omitted). The presence of the defendant in the District of Columbia must be "continuous and systematic" and related to the complaint in order to meet the minimum contact requirement. *International Shoe, supra.* That is not the case in the matter at hand. Ms. Benoit, for instance, does not meet the requisite minimum contacts or connection to the District of Columbia as the facts surrounding Plaintiff's allegations took place, if at all, in Massachusetts and Ms. Benoit has no ties to the District of Columbia. 2nd Am. Compl., ¶¶ 4, 121; Benoit Decl., ¶¶ 1-7. Plaintiff has failed to allege that the out-of-state defendants have sufficient minimum contacts pursuant to D.C. Code § 13-423 with the District of Columbia to make them amenable to suit in this Court, and thus this Court lacks personal jurisdiction over the out-of-state Defendants. *See Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 524 (D.C. Cir. 2001) (noting the general rule… that a plaintiff must make a *prima facie* showing of the pertinent jurisdictional facts) (internal quotations and citations omitted); *see also Moore v. Motz*, 437 F. Supp. 2d 88, 91 (D.D.C. 2006) ("Plaintiff must allege specific facts on which personal jurisdiction can be based[.]"). Consequently, the Court should dismiss all claims against the individual defendants for lack of personal jurisdiction in accordance with Federal Rules of Civil Procedure 12(b)(2).

<u>Venue Is Improper In This Court</u>

Generally speaking, venue must be established for each cause of action. *Lamont v. Haig*, 590 F.2d 1124, 1135 (D.C. Cir. 1978); *Hayes v. RCA Service Co.*, 546 F. Supp. 661, 664 (D.D.C. 1982). Plaintiff's claim against the individual defendants should also be dismissed pursuant to Rule 12(b)(3) for improper venue. Venue in a case against an

individual federal defendant is governed by 28 U.S.C. § 1391(b). *Stafford v. Briggs*, 444 U.S. 527, 544 (1980); *Cameron v. Thornburgh*, 983 F.2d 253, 257 (D.C. Cir. 1993); *Moore v. Agency for International Development*, 994 F.2d at 878; *see also Pollack v. Meese*, 737 F. Supp. at 665.[7]  Under section 1391(b), a *Bivens* cause of action may only be brought in a judicial district where:  (1) any defendant resides if all defendants reside in the same state; (2) a substantial part of the events or omissions giving rise to the claim occurred or a substantial part of the property that is the subject of the action is situated; or (3) any defendant may be found if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b).

In this case, venue is not proper in the United States District Court for the District of Columbia under 28 U.S.C. § 1391(b).  Plaintiff makes no allegation that the defendants reside in the District of Columbia.  *See* 2nd Am.  Compl., ¶¶ 4, 121.  Also, none of the alleged events or omissions giving rise to Plaintiff's claims against the individual defendants took place in the District of Columbia.  2nd Am. Compl., ¶¶ 4-5, 20, 121; Benoit Decl., ¶¶ 1-7.

Plaintiff states in his complaint that the alleged constitutional violations caused by the individual defendants occurred at DCMA, in Virginia.  2nd Am. Compl. at 1-2, ¶¶ 136, 170-171.  The Court of Appeals has cautioned that "Courts in this circuit must examine challenges to personal jurisdiction and venue carefully to guard against the danger that a plaintiff might manufacture venue in the District of Columbia." *Cameron*

---

[7] Plaintiff relies on the venue provisions of 5 U.S.C. §§ 552(a)(4)(B), 552a(g)(5) and 703 as well as 28 U.S.C. § 1391(e).  2nd Am. Compl., ¶ 2.

*v. Thornburgh*, 983 F.2d at 256-57.  Thus, lack of venue warrants dismissal of the claims in this action as well.

<u>Failure To State a Claim and Qualified Immunity</u>

Plaintiff attempts to extend *Bivens* into a new context, a judicial activity the Supreme Court has repeatedly emphasized is disfavored.  Moreover, that new context is replete with special factors counselling against creating a judicially implied damages remedy.

A.   <u>Implying a damages remedy under the Constitution is disfavored.</u>

i.   <u>The change occasioned by *Abbasi*.</u>

Plaintiff suggests that this Court should create a damages remedy under *Bivens*, an action that "is now a 'disfavored' judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (citation omitted).  In *Abbasi*, the Supreme Court explained that *Bivens*, decided over forty-five years ago, arose in a different legal "interpretive framework" in which courts "assumed it to be a proper judicial function to provide such remedies as are necessary to make effective a statute's purpose." *Id.* at 1855 (internal quotations and citations omitted).  Under this former practice, the *Bivens* court held that "courts must adjust their remedies so as to grant the necessary relief when federally protected rights have been invaded." *Id.* (internal quotations and citations omitted). *Bivens* itself provided a damages remedy under the Fourth Amendment for an individual arrested without a warrant in his home in Brooklyn on drug charges. *See Bivens*, 403 U.S. at 389. In the decade after *Bivens*, and still under the then-prevailing legal framework, the Court expanded *Bivens* into only two new contexts: "a claim against a Congressman for firing

13

his female secretary; and a claim against prison officials for failure to treat an inmate's asthma." *Abbasi*, 137 S. Ct. at 1860.

But in the more than three decades since, the legal landscape has shifted away from implied causes of action, and the Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (citation omitted). Indeed, in the eight cases that came before the Court in that period—nine including *Abbasi*—the Court held that a *Bivens* remedy was not available. *See, e.g.*, *id.* at 1863 (rejecting claims by post-September 11 detainees against Executive Branch officials); *Wilkie v. Robbins*, 551 U.S. 537, 547-48 (2007) (rejecting claims against officials for allegedly pushing "too hard" in the execution of their duties); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (rejecting claim against private prison operator). The Court itself has even noted that "in light of the changes to the Court's general approach to recognizing implied damages remedies, it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Abbasi*, 137 S. Ct. at 1856. Although the Court has not abrogated *Bivens*, it has repeatedly emphasized that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citation omitted).

Accordingly, the Court explained that when a party "seeks to assert an implied cause of action under the Constitution . . . separation-of-powers principles are or should be central to the analysis." *Id.* "The question is 'who should decide' whether to provide for a damages remedy, Congress or the courts?" *Id.* (quotation omitted). Because it is "not necessarily a judicial function to establish whole categories of cases in which federal officers must defend against personal liability claims in the complex sphere of litigation, with all of its burdens on some and benefits to others," the Court concluded that the

"answer most often will be Congress." *Id.* at 1857-58. That is because when an issue

"involves a host of considerations that must be weighed and appraised, it should be

committed to those who write the laws rather than those who interpret them." *Id.*

(quotation omitted). *See also Meshal v. Higgenbotham*, 804 F.3d 417, 425 (D.C. Cir.

2015).

ii.   The standard for implying a damages remedy.

*Abbasi* also clarified the standard for evaluating whether to imply a damages

remedy under *Bivens*.  First, a court must determine whether recognizing a remedy would

extend *Bivens* into a new context.  The Court narrowly defined "new context" as an

instance where "the case is different in a meaningful way from previous *Bivens* cases

decided by [the Supreme] Court." *Abbasi*, 137 S. Ct. at 1859.  In other words, if the case

is different "in a meaningful way" from either Fourth Amendment claims against federal

law enforcement officers for a warrantless search and seizure of an individual on

suspected drug offenses, *see Bivens*, 403 U.S. at 389; Fifth Amendment claims for the

firing of a female congressional secretary based on her gender, *see Davis v. Passman*,

442 U.S. 228, 230 (1979); or Eighth Amendment claims against prison officials for

failing to treat an inmate's asthma, causing him death, *see Carlson v. Green*, 446 U.S. 14,

19 (1980), then the context is new.

The Court then offered a non-exhaustive list of examples that could "prove

instructive" in determining whether differences are meaningful. *Abbasi*, 137 S. Ct. at

1860.  That list included, among others, the following examples: "the rank of the officers

involved"; "the statutory or other legal mandate under which the officer was operating";

"the risk of disruptive intrusion by the Judiciary into the functioning of other branches";

and "the presence of potential special factors that previous *Bivens* cases did not consider." *Id.* Moreover, seemingly minor differences, if meaningful, can present a new context. As the *Abbasi* court noted, "even a modest extension is still an extension." *Id.* at 1864. If a plaintiff seeks to extend *Bivens* into a new context, then the court *must* address whether special factors counsel hesitation. *See id.* at 1860.

To answer that question, the Supreme Court has engaged in a two-step inquiry. The court first asks whether Congress has instituted "any alternative, existing process for protecting" a plaintiff's interests, *Wilkie*, 551 U.S. at 550, or any "meaningful safeguards or remedies" for the plaintiff. *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988). Such actions by Congress imply that it "expected the Judiciary to stay its *Bivens* hand" and not infer a new damages remedy. *Wilkie*, 551 U.S. at 554; *see, e.g.*, *Abbasi*, 137 S. Ct. at 1863 ("And when alternative methods of relief are available, a *Bivens* remedy usually is not."); *Wilson v. Libby*, 535 F.3d 697, 704-10 (D.C. Cir. 2008) (holding that Privacy Act provides alternative process that precludes a *Bivens* remedy); *Spagnola v. Mathis*, 859 F.2d 223, 227-28 (D.C. Cir. 1988) (holding that Civil Service Reform Act provides alternative process that precludes a *Bivens* remedy). That Congress's scheme may not provide the precise remedy a plaintiff seeks does not alter this analysis. *See United States v. Stanley*, 483 U.S. 669, 683 (1987) ("[I]t is irrelevant to a 'special factors' analysis whether the laws currently on the books afford [defendants] an 'adequate' federal remedy for his injuries."); *see also Spagnola*, 859 F.2d at 227 ("[I]t is the comprehensiveness of the statutory scheme involved, not the 'adequacy' of specific remedies extended thereunder, that counsels judicial abstention." (citation omitted)).

16

Second, even if no alternative process exists, the court considers whether there are any additional "special factors counselling hesitation." *Wilkie*, 551 U.S. at 550.  Although the Court "has not defined" that phrase, the "necessary inference . . . is that the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed." *Abbasi*, 137 S. Ct. at 1857-58.  The threshold for being a special factor is quite low.  Indeed, "to be a 'special factor counselling hesitation,' a factor must cause a court to hesitate before answering that question in the affirmative." *Id.*  The *Abbasi* court provided several examples of such special factors. One is a claim that "of necessity" requires "an inquiry into sensitive issues of national security." *Id.* at 1861. "Indeed, 'courts traditionally have been reluctant to intrude upon the authority of the Executive in military and national security affairs' unless 'Congress has specifically provided otherwise.'" *Id.* (quoting *Dep't of Navy v. Egan*, 484 U.S. 518, 530 (1988)).  As the Court explained, "[j]udicial inquiry into the national-security realm raises 'concerns for the separation of powers in trenching on matters committed to the other branches.'" *Id.* (quotation omitted).  Those concerns are "even more pronounced" when the inquiry comes in the "context of a claim seeking money damages rather than a claim seeking injunctive or other equitable relief." *Id.*  That is because the "risk of personal damages liability" may cause an official "to second-guess difficult but necessary decisions" related to national-security policy. *Id.*

 B. <u>Plaintiff asks this Court to extend *Bivens* into a new context.</u>

Plaintiff's constitutional claims clearly seeks to extend *Bivens* into a new context. None of the three cases extending a *Bivens* remedy—the seminal case, *Davis*, and

*Carlson*—involved a context remotely similar to the one here: Plaintiff suggests that she has suffered damage to her reputation and that telling her current employer that "Plaintiff posed a possible insider threat derived [Plaintiff] of a Federal Fifth Amendment constitutional liberty interest in not being falsely stigmatized (a 'stigma')." 2nd Am. Compl., ¶ 296. The differences between this new, unusual context and that of the three Supreme Court cases mentioned above are certainly "meaningful."

Plaintiff relies on the First Amendment as a basis to secure damages from her former supervisor for her following the then-existing guidelines for reporting insider threats. Plaintiff suggests that this amounted to retaliation for Plaintiff's complaints about her treatment at the agency (which she agrees could be described as workplace intimidation." 2nd Am. Compl., ¶¶ 142-161, 227. Insofar as Plaintiff asserts a Fifth Amendment claim, it is based on the discontinuance of her secret clearance for some months during which she was apparently required to work from somewhere other than the offices of DCMA in Manassas, Virginia. 2nd Am. Compl., ¶¶ 171-191. These claims are far beyond those recognized in *Abbassi*.

Plaintiff's purported *Bivens* claims also present "potential special factors that previous *Bivens* cases" authorizing claims "did not consider," that is, national security concerns and claims involving the work to assist the military. Indeed, in cases the Supreme Court has considered that raised those special factors, the Court consistently refused to imply a damages remedy. *See Abbasi*, 137 S. Ct. at 1861-62; *Stanley*, 483 U.S. at 671-72; *Chappell v. Wallace*, 462 U.S. 296, 304-05 (1983). Because Plaintiff's claims seeks to extend *Bivens* into a new context, this Court must determine whether any special factors counsel hesitation.

C.   Special Factors Preclude a *Bivens* remedy.

The first step of this inquiry, whether Congress has provided an alternative

process, disposes of Plaintiff's claims.  Congress has created an alternative process to

address claims similar to that of Plaintiff.  Where, for instance, she wishes to challenge a

personnel decision, like her treatment as a federal employee, she may pursue claims

under the Civil Service Reform Act, which, as  Plaintiff has conceded (*see* Exhibit 1 at

2), acts as a special factor precluding a damages remedy against her current or former co-

workers.  Spagnola, 859 F.2d at 227-28; *Schweiker v. Chilicky*, 487 U.S. at 425

*see also* Abbasi, 137 S. Ct. at 1863 ("And when alternative methods of relief are

available, a Bivens remedy usually is not."); *Wilson v. Libby*, 535 F.3d 697, 704-10 (D.C.

Cir. 2008) (holding that Privacy Act provides alternative process that precludes a *Bivens*

remedy).  Plaintiff appears to recognize that, if she is asserting that she was the subject of

retaliation for speaking out about misconduct she sees in the government, then her

remedy would be the Whistleblower Protection Act or the Whistleblower Protection

Enhancement Act (*see* 5 U.S.C. § 2302(b)).   2nd Am. Compl., ¶¶ 268-269.

That precludes a damages remedy here.  As the *Abbasi* court explained, "if there

are sound reasons to think Congress *might doubt* the efficacy or necessity of a damages

remedy" in a specific context, "the courts *must refrain* from creating the remedy in order

to respect the role of Congress in determining the nature and extent of federal-court

jurisdiction under Article III." 137 S. Ct. at 1858 (emphases added). *See also Tun-Cos v.*

*Perrotte*, 922 F.3d 514, 523 (4th Cir. 2019) (quoting *Abbasi* and adding emphases).  In

the context that Plaintiff's claims present, there are abundant reasons to think Congress

not only "might," but *would* "doubt the efficacy or necessity of a damages remedy." Plaintiff's claim should therefore be dismissed.

The D.C. Circuit aptly observed that the Supreme Court "has never implied a *Bivens* remedy in a case involving the military [or] national security." *Doe v. Rumsfeld*, 683 F.3d 390, 394 (D.C. Cir. 2012).  Indeed, the Supreme Court recently reinforced that observation.  The *Abbasi* court dismissed the plaintiffs' claims in part because they required "an inquiry into sensitive issues of national security." 137 S. Ct. at 1861.  After noting that such an inquiry by a court "raises 'concerns for the separation of powers in trenching on matters committed to other branches,'"—the "central" concerns of a special factors analysis—the Court added that those concerns "are even more pronounced" when the inquiry results from a claim seeking damages. *Id.* at 1857, 1861.

The D.C. Circuit in *Doe* emphasized that the "strength of the special factors of military and national security" has been "underlined" by precedent beyond that in *Bivens*, as "matters intimately related to . . . national security are rarely proper subjects for judicial intervention." 683 F.3d at 394-95 (quoting *Haig v. Agee*, 453 U.S. 280, 292 (1981)). The court added that neither the D.C. Circuit nor other circuits had ever implied a damages remedy in a case involving the military or national security. *See* 683 F.3d at 395 (discussing *Ali v. Rumsfeld*, 649 F.3d 762 (D.C. Cir. 2011) (no *Bivens* for Iraq and Afghanistan detainees against military officers because claims implicate military and national security), *Wilson*, 535 F.3d at 710 (no *Bivens* for outed CIA operative in part because claims implicate national security), *Arar v. Ashcroft*, 585 F.3d 559 (2d Cir. 2009) (en banc) (no *Bivens* for individual delivered to captivity in Syria in part because claims

implicate national security), and *Lebron v. Rumsfeld*, 670 F.3d 540 (4th Cir. 2012) (no

*Bivens* for terrorist detainee because claims implicate the military and national security)).

That observation holds true to date. *See, e.g.*, *Vanderklok v. United States*, 868

F.3d 189, 206-07 (3d Cir. 2017) (no *Bivens* for airline passenger against TSA agent in

part because claims implicate national security); *Meshal*, 804 F.3d at 425-26 (no *Bivens*

for citizen detained and interrogated by FBI abroad in part because claims implicate

national security, "a special factor counseling *serious* hesitation" (emphasis added));

*Vance*, 701 F.3d at 199-200 (no *Bivens* for citizens detained by military in Iraq because

claims implicate military and national security).

Plaintiff's claims involve both the military and national security.  This "deep

current of authority," *Meshal*, 804 F.3d at 422, flows directly against Plaintiff's claims.

Her claims implicate both the military and national security.  First, Plaintiff alleges that

she was not permitted to access government information classified at the secret level, and

she seeks damages for being denied access to a DoD facility.  Discovery could be

expected to delve into the decisions to allow or disallow Plaintiff's access to the nation's

military secrets.  That in turn could undermine the command hierarchy that is

fundamental to the military and its effectiveness. Those very concerns are at the core of

the Supreme Court's and lower courts' refusal to imply a damages remedy for claims

involving the military. *See, e.g.*, *Stanley*, 483 U.S. at 682-83; *Chappell*, 462 U.S. at 300;

*Doe*, 683 F.3d at 396. *Cf. Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666,

673 (1977) (dismissing third-party claim in part because "trial would . . . involve second-

guessing military orders, and would often require members of the Armed Services to

testify in court as to each other's decisions and actions").

Second, Plaintiff's claims would call into question military policy. The Department of Defense adopted its policies in an effort to protect against inside threats and protect the country's national security information. *See* 2nd Am; Compl., ¶¶ 8-18, 275-281. Any inquiry into why the Department of Defense adopted that policy, how it construed the authority Congress gave to it, what purposes that policy serves, and analyses the Department of Defense conducted regarding the constitutionality of that policy, would by definition require an inquiry into military and national-security policy. But such policy "is the prerogative of the Congress and President," not the Judiciary. *Abbasi*, 137 S. Ct. at 1849. *See Chappell*, 462 U.S. at 301 ("It is clear that the Constitution contemplated that the Legislative Branch has plenary control over rights, duties, and responsibilities in the framework of the military establishment . . . ."); *see also Doe*, 683 F.3d at 395-96 (noting complaint "would require a court to delve into the military's policies" regarding military detainees); *Lebron*, 670 F.3d at 551 (noting complaint "seeks quite candidly to have the judiciary review and disapprove sensitive military decisions made after extensive deliberations within the executive branch as to what the law permitted, what national security required, and how best to reconcile competing values").

Third, adjudication of Plaintiff's claims implicate national security. Her claim challenges the actions of the military in delaying Plaintiff's access to a federal facility classified information. Permitting the defendants who reported a potential threat to face prolonged litigation and potential personal liability for their actions may cause them and others to hesitate in carrying out their duties, and thereby undermine the overall

effectiveness of the military.  Such an outcome could alter the extent to which the DoD is able to protect its members, employees and national security information.

This is not to say that the Judiciary has no role in considering matters that may implicate national security where Congress has so provided. Rather, it is to say that in *this lawsuit*, where the plaintiff asks this Court to *imply* a remedy that does not currently exist; where Congress has already expressed its preference that courts not consider such claims; where such claims involve the military, intrude upon the province of the Legislative and Executive Branches, and implicate national security; and where a "deep current of authority," including in the D.C. Circuit, bars such claims, the courts should stay their hand and not imply a remedy under *Bivens*.  Plaintiff's claims should be dismissed.  *See  Storms v. Shinseki*, 319 F. Supp. 3d 348, 353 (D.D.C. 2018), *aff'd*, 777 F. App'x 522 (D.C. Cir. 2019) (recognizing, post-*Abbasi* that First Amendment *Bivens* claim would constitute a "new context" action and that special factors preclude such a claim) (citing *Jangjoo v. Sieg*, 319 F. Supp. 3d 207, 215-17 (D.D.C. 2018)); *Johnson  v. Burden*, 781 F. App'x 833, 2019 WL 2949425 (11th Cir. 2019) (district court erred in concluding that *Bivens* extends to First Amendment retaliation claims in light of *Abbasi*); *Palmieri v. United States*, 72 F. Supp. 3d at 206-07 (Plaintiff does not have a liberty or property interest in a security clearance, so the security clearance cannot serve as a predicate liberty or property interest) (citing *Dorfmont v. Brown,* 913 F.2d 1399, 1404 (9th Cir. 1990) ("[A] claim for denial of due process stemming from the revocation of a security clearance is not a colorable constitutional claim."); *El–Ganayni v. U.S. Dep't of Energy,* 591 F.3d 176, 183 n. 4 (3d Cir. 2010); *Robinson v. Dep't of Homeland Security,* 498 F.3d 1361, 1364 (Fed. Cir. 2007); *Jamil v. Sec'y of Dep't of Defense,* 910 F.2d 1203,

1209 (4th Cir. 1990); *Egan,* 484 U.S. at 528 (explaining that the decision to grant a security clearance is "an affirmative act of discretion on the part of the granting official," and that "no one has a 'right' to a security clearance").

Indeed, as the Court in *Palmieri* recognized, the assertion that a plaintiff has suffered an injury to his livelihood does not give rise to a protected liberty or property interest, because the right "to earn a living" does not extend to jobs requiring a security clearance. *Palmieri v. United States*, 72 F. Supp. 3d at 206-07 (citing *Dorfmont,* 913 F.2d at 1403 ("If there is no protected interest in a security clearance, there is no liberty interest in employment requiring such clearance."); *see also Siegert v. Gilley*, 500 U.S. 226, 231-34 (1991). In *Siegert*, the Supreme Court recognized that certain statements would undoubtedly damage the reputation of one in the plaintiff's position, and impair his future employment prospects, but the plaintiff in *Paul v. Davis* similarly alleged serious impairment of his future employment opportunities as well as other harm. *Siegert v. Gilley*, 500 U.S. at 234 (citing *Paul v. Davis*, 424 U.S. 693 (1976)). The *Siegert* court continued: "Most defamation plaintiffs attempt to show some sort of special damage and out-of-pocket loss which flows from the injury to their reputation. But so long as such damage flows from injury caused by the defendant to a plaintiff's reputation, it may be recoverable under state tort law but it is not recoverable in a *Bivens* action." 500 U.S. at 234.

D.  Qualified Immunity Would Bar Plaintiff's Claims In Any Event

Qualified immunity shields government officials from personal damages liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982).  To defeat the presumption of qualified immunity, a plaintiff must

plead "facts showing (1) that the official violated a statutory or constitutional right, and

(2) that the right was clearly established at the time of the challenged conduct."  *Ashcroft*

*v. al-Kidd,* 563 U.S. 731, 735 (2011) (quotation marks omitted); *see also Daugherty v.*

*Sheer,* 891 F.3d 386, 390 (D.C. Cir. 2018).

        To satisfy the first of those showings, a complaint must contain "sufficient

factual matter, accepted as true, to state a claim to relief that is plausible on its face" that

defendants violated the Constitution.  *Iqbal,* 556 U.S. at 678 (quotation marks omitted).

Conclusory allegations and "naked assertion[s] devoid of further factual enhancement"

are not entitled to the assumption of truth; only "well-pleaded factual allegations" can

"plausibly give rise to an entitlement to relief."  *Id.* at 678-79

(quotation marks omitted).

        In the context of a First Amendment retaliation claim brought under 42 U.S.C. §

1983, this Court has held that a plaintiff must allege (1) "that he engaged in protected

conduct"; (2) "that the government took some retaliatory action sufficient to deter a

person of ordinary firmness in plaintiff's position from speaking again";

and (3) "that there exists a causal link between the exercise of a constitutional right and

the adverse action taken against him."  *Doe v. District of Columbia*, 796 F.3d 96, 106

(D.C. Cir. 2015) (quotation marks omitted).  "To satisfy the causation link, a plaintiff

must allege that his or her constitutional speech was the 'but for' cause of the

defendants' retaliatory action."  *Id.* at 107; *see also Daugherty,* 891 F.3d at 391-92

(concluding that First Amendment retaliation claim failed because administrative

enforcement action "had an alternative cause . . . even assuming retaliatory motive").

Here, "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Initially, Plaintiff is unclear that Defendant Benoit even noted her insider threat report to her new employer, suggesting at times that it was Ms. Benoit <u>or</u> one of the John Does.   2nd Am. Compl., ¶ 284.[8]

Similarly, Plaintiff has failed to plead that her speech was the but-for cause of any adverse action taken against her. *See Daugherty*, 891 F.3d at 388.   To the contrary, Plaintiff admits that other employees accused Plaintiff of, at a minimum, intimidation and that one or more of the John Doe defendants may have notified her current employer of the insider threat investigation.   2nd Am. Compl., ¶¶ 149-164, 284.   Under those circumstances, it is implausible that Ms. Benoit's actions were the but-for cause of Plaintiff being suspended.   And there is, at the very least, an "obvious alternative explanation," *Iqbal,* 556 U.S. at 682, for the facts (as opposed to the suppositions) alleged in the complaint: that someone else notified Plaintiff's employer of the investigation.

In any event, defendants would be entitled to qualified immunity because the conduct alleged "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.   As discussed above, it is unclear that officials can, in any but the most exceptional circumstances, violate the First Amendment merely by speaking themselves. *See Mulligan,* 835 F.3d at

---

[8]  Defendant Benoit does not admit that she was responsible for Plaintiff's new employer learning of the Insider Threat investigation, but the Court may assume that she did so for purposes of this motion, and the *Bivens* claims are still subject to dismissal.

990 (noting that the "circuit courts that have considered the issue have required plaintiffs

alleging government retaliation that takes the form of speech to meet a high threshold");

*see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 687 (4th Cir. 2000) (holding that

where official's alleged retaliation "is in the nature of speech," the First Amendment is

not violated "in the absence of a threat, coercion, or intimidation intimating that

punishment, sanction, or adverse regulatory action will imminently follow").

At a minimum, Plaintiff has not identified any case by this Court or the Supreme

Court that would have put the individual defendants on notice that advising a DoD

employer of an employee's past insider threat investigation, would violate the First

Amendment.  Plaintiff has thus failed to meet his burden to demonstrate that "in light of

pre-existing law, the unlawfulness of the officer's conduct [was] apparent." *Abbasi,* 137

S. Ct. at 1867 (quotation marks omitted).  And she certainly has not succeeded in

"identify[ing] a case where an [official] acting under similar circumstances . . . was held

to have violated [the Constitution]." *White v. Pauly,* 137 S. Ct. 548, 552 (2017) (per

curiam); *see Siegert, Palmieri,* and *Paul v. Davis.*

For these reasons, Plaintiff's individual capacity claims should be dismissed

pursuant to Fed. R. Civ. P. 12(b)(1),(b)(2),(b)(3) and (b)(6).

II.     Plaintiff's Claim Challenging Instruction 563 (Count III) should be dismissed

Plaintiff complains that Instruction 563 is invalid, because it did not comply with

Executive Order 13,587 and its requirement that insider threat practices protect

individual's civil rights.  2nd Am. Compl., ¶¶ 142, 218-223.  First, Instruction 563 did,

in fact, include the protections that Plaintiff complains were absent. *See* Exhibit 2 at 4

and 20 ("The collection, use, maintenance, dissemination, and retention of [Insider

Threat] -related information and records will comply with applicable statutes and DoD and DCMA policies, including those regarding whistleblower, civil liberties, and privacy protections.")

In any event, Plaintiff has conceded that Instruction 563 no longer provides the operative instructions regarding the insider threat program, rendering the Court's assessment of its adoption moot.  2nd Amended Compl., ¶¶ 202-204.  "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Iron Arrow Honor Society v. Heckler*, 464 U.S. 67, 70 (1983); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy.").

"Article III standing can be destroyed by mootness, and a claim may become moot in various ways, including where the offending factor has ceased to exist." *Matthews v. District of Columbia*, 521 F. Supp. 2d 79, 82 (D.D.C. 2007) (Judge Roberts) (citing *Worth v. Jackson*, 451 F.3d. 854, 860-61 (D.C. Cir. 2006) (noting that mootness is a doctrine that inter-relates and overlaps with standing, and deciding that a claim for injunctive relief from enforcement of a policy was moot where the offending policy had been rescinded)).  A case is moot where "events outrun the controversy" such that the court can grant no meaningful relief. *Cf. Allen v. Nicholson*, 573 F. Supp. 2d 35, 38 (D.D.C. 2008) (quoting *McBryde v. Comm. to Review Circuit Council Conduct & Disability Orders of the Judicial Conference of the United States*, 264 F.3d 52, 55 (D.C. Cir. 2001)).

> Article III, s 2, of the Constitution confines federal courts to the decision of "Cases" or "Controversies."  Standing to sue or defend is an aspect of the case or controversy requirement.
>
> * * *
>
> An interest shared generally with the public at large in the proper application of the Constitution and laws will not do.
>
> * * *
>
> The standing Article III requires must be met by persons seeking appellate review, just as it must be met by persons appearing in courts of first instance.
>
> * * *
>
> To qualify as a case fit for federal-court adjudication, an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.

*Arizonans For Official English v. Arizona*, 520 U.S. 43, 64-67 (1997) (internal quotations and cases omitted).

Here, even if the process that was employed under DCMA Instruction 563 was somehow faulty, Plaintiff prevailed under that process, the instruction has been replaced, and Plaintiff has not suggested how the replaced instruction could have any effect on Plaintiff in the future.  2nd Amended Compl. at 2, ¶¶ 155, 254, 274.  Thus, the claims are moot.  *See Anyanwutaku v. Moore*, 151 F.3d 1053, 1057 (D.C. Cir. 1998) ("when a prisoner seeking injunctive or declaratory relief challenges his parole eligibility date but is subsequently released on parole, his claims are moot unless he alleges continuing adverse consequences from the challenged parole records").

In any event, Executive Order 13,587 provides no cause of action.  Plaintiff's efforts to secure relief by virtue of language from an Executive Order should be rejected, because that Executive Order specifically precludes the creation of any right enforceable by a party.  The Executive Order upon which Plaintiff relies specifically provides as follows:

29

(i)This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

Executive Order 13,587, § 7(i), 76 Fed. Reg. 63811, 63813, 2011 WL 5041305;

Complaint, ¶¶ 19-30.

Plaintiff cannot prevail in a case premised on the requirements of an Executive Order where the order at issue includes the above language. *See Savage v. Burwell*, Civ. A. No. 15-0791 (CRC), 2016 WL 4132196, at *3 (D.D.C. Aug. 3, 2016); *see also Barhoumi v. Obama*, 234 F. Supp. 3d 84, 88 (D.D.C. 2017) (finding no legal right for Plaintiff to stand because the review process was created through an Executive Order with expressed language against creating a "any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person."); *Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) ("An Executive Order devoted solely to the internal management of the executive branch - and one which does not create any private rights - is not, for instance, subject to judicial review.").

Accordingly, despite her efforts to do so (*see* 2nd Amended Compl., ¶¶ 8, 218-219), Plaintiff may not base her claim on the Executive Order, given its clear instruction that it creates no rights or benefits enforceable at law.

### III.  The Motion to Strike

This Court should strike the immaterial, impertinent and sometimes scandalous material from the Complaint.   Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   Fed. R. Civ. 12(f).   If allegations in a complaint are irrelevant and prejudicial to

the defendant, a motion to strike will be granted.  *Wiggins v. Philip Morris, Inc.*, 853 F.

Supp. 457, 457-58 (D.D.C. 1994) (striking paragraphs from a complaint where they are

irrelevant to the issue in the case and reflect poorly on a "renegade employee – not a

party to the suit") (*citing Todhunter, Mandava, & Assocs. v. I.C.C.I. (Holdings) Pty. Ltd.*,

C.A. No. 88-3031, 1991 WL 166585 (D.D.C. Aug. 14, 1991) (Lamberth, J.).

Here, Plaintiff has filed a 300-paragraph Second amended complaint, much of

which related to issues that were voluntarily dismissed (ECF No. 14).  But, although

Plaintiff has secured permission to proceed without identifying herself on the public

record, she spends pages and pages listing allegations against named individuals who are

not parties to this action, accusing them of such irrelevant things as playing computer

games at work (2nd Am. Compl., ¶ 21-22), and engaging in unethical behavior in

violation of bar rules by using a disabled parking placard without any need and running

an eBay business at work. (*id.*, ¶¶ 29-41, 27-30, 57-67).   Other persons are alleged to be

engaged in personal relationships (*id.*, ¶¶ 74-80), or leaving one's marriage and dating

"hostesses" (id., ¶ 45-51), and a non-party is accused of viewing videos making fun of

African-Americans (*id.*, ¶ 53-54), and another contractor selling a house. (*Id.*, ¶¶ 83,

107).  Plaintiff belittles another employee's skills in contract law, *see id.*, ¶¶ 125-135 and

cites another individual's diagnosis with Post Traumatic Stress Disorder.  (*Id.*, ¶ 155).

Plaintiff cites her fear of being alone with other non-parties, whom she suggests are liars.

(*Id.*, ¶ 177).   If all but Counts I and II are dismissed, the remaining FOIA claims will

have no relevance to the many irrelevant, disparaging paragraphs.

If these allegations remain in what should be a simple FOIA action, the third

parties will continue to be harmed as Defendant may be called upon to assess whether

these irrelevant matters ever took place and so state in a public filing.  Defendant will have to make reasonable inquiry into these seedy and immaterial allegations in order to respond to the claims that involve such unrelated matters as the processing of Plaintiff's FOIA requests.  Thus, Defendant and these non-parties will suffer prejudice for no good reason.  For these reasons, the offending and irrelevant paragraphs should be stricken.

CONCLUSION

For these reasons, Defendants move for dismissal of Counts III, IV and V of the 2nd Amended Complaint and ask that the Court strike from the pleading the following paragraphs: 4-5, 7-204, 224-300.

November 14, 2019

Respectfully submitted,

JESSIE K. LIU, DC Bar #472845
United States Attorney

DANIEL F. VAN HORN, DC Bar #924092
Chief, Civil Division

By:_____/s/
W. MARK NEBEKER, DC Bar #396739
Assistant United States Attorney
555 4th Street, N.W.
Washington, DC  20530
(202) 252-2536
mark.nebeker@usdoj.gov