UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

J.Q. DOE,

       *Plaintiff*,

v.

ANDREA LYNNE BENOIT, *et al.*,

       *Defendants.*

No. 19-cv-1253 (DLF)

## MEMORANDUM OPINION

In this case, the pseudonymous plaintiff J.Q. Doe asserts five counts against various defendants for alleged injuries connected to an "insider threat" investigation against Doe. In particular, Doe asserts two counts against the Department of Defense under the Freedom of Information Act, 5 U.S.C. § 552, *et seq.*, and the Privacy Act, 5 U.S.C. § 552a, *et seq.* (collectively, FOIA); one count against the Department of Defense and (in his official capacity) Secretary of Defense Mark T. Esper under the Administrative Procedure Act (APA), 5 U.S.C. § 701, *et seq.*; one count against Andrea Lynne Benoit in her individual capacity under the First Amendment, based on *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971); and one count against Benoit and ten unknown John Doe defendants in their individual capacities under the Due Process Clause of the Fifth Amendment, again based on *Bivens*. Before the Court is the government's Motion to Dismiss in Part and to Strike, Dkt. 32. For the following reasons, the Court will grant in part and deny in part the motion.

I.     BACKGROUND

In October 2012, Doe joined the Defense Contract Management Agency's Eastern Regional Command legal office in Massachusetts as Assistant Counsel. 2d Am. Compl. ¶ 111,

Dkt. 30.  In September 2015, that agency hired Benoit as Eastern Regional Command Counsel, making her Doe's boss.  *Id.* ¶ 130.  In May 2016, Doe "received a geographic transfer" to the Defense Contract Management Agency's Manassas Contract Management Office in Chantilly, Virginia.  *Id.* ¶¶ 136–37.  This case centers on an allegedly ill-founded "insider threat" investigation that Benoit launched against Doe in November 2016.

The term "insider threat" describes anyone who "wittingly or unwittingly" uses authorized access to Department of Defense resources "to harm national security interests or national security through unauthorized disclosure, data modification, espionage, terrorism, or kinetic actions resulting in loss or degradation of resources or capabilities of the United States." *Id.* ¶ 13.  In 2011, President Obama issued Executive Order 13,587, which "directed federal departments and agencies with access to classified information to establish insider threat detection and prevention programs."  *Id.* ¶ 9.

Based on this directive, in June 2016 the Defense Contract Management Agency issued Instruction 563.  *Id.* ¶ 141.  Instruction 563 was meant to "assist personnel in identifying potential insider threat indicators," outline "associated reporting guidance and procedures," and serve as "a concise reference that can be used to increase early warning sign recognition of potentially concerning actions/behaviors."  *Id.* ¶ 159.  Though the Defense Contract Management Agency rescinded Instruction 563 and replaced it with Manual 3301-05 on November 2018, *id.* ¶¶ 202–203, Instruction 563 was the operative guidance at the time of Doe's insider threat investigation, *id.* ¶¶ 165–68.

In November 2016, Benoit filed an Insider Threat Report against Doe under Instruction 563.  *Id.* ¶ 165.  Benoit felt "obligated" to file the report based in part on an email from Doe's coworker.  *Id.*  The email described Doe as showing "threatening and erratic" behavior toward

2

the coworker and becoming "increasingly unprofessional, paranoid[,] and aggressive." *Id.* ¶ 153–54. The Defense Contract Management Agency placed Doe on indefinite leave while it investigated this report. *Id.* ¶ 171. On December 14, 2016, an investigator interrogated Doe for six hours. *Id.* ¶ 172. By January 2017, the investigators had concluded that Doe "was never an insider threat," *id.* ¶ 183, and Doe returned to work in early 2017, *id.* ¶¶ 176, 178.

In July 2017, Doe left the Defense Contract Management Agency for a different Department of Defense agency. *Id.* ¶ 179. About two weeks later, Benoit allegedly directed ten unknown Defense Contract Management Agency "officials or employees"—the ten John Doe defendants in this case—to notify the security office of Doe's new employer that Doe had been evaluated as a possible insider threat. *Id.* ¶ 181. This notification prompted "a new suitability evaluation or investigation" of Doe. *Id.* ¶ 184. None of the John Does told the security office that the earlier insider threat investigation had cleared Doe. *Id.* ¶ 183. The security office also notified Doe's first- and second-level supervisors that Doe's security clearance had been flagged based on the information from Benoit and the other ten unknown employees. *Id.* ¶ 185. On May 18, 2018, Doe's employer notified Doe that the Office of Personnel Management had completed its security background investigation and had favorably adjudicated Doe for a Secret clearance. *Id.* ¶ 189.

Doe's security clearance issues and the stigma associated with being labeled a potential insider threat allegedly injured Doe in a few ways. They limited the kind of work that Doe could do, thus "angering and frustrating" Doe's supervisors. *Id.* ¶ 186. They caused Doe's second-level supervisor to give negative references to Doe's future potential employers. *Id.* ¶ 188. And they led Doe's first-level supervisor to award Doe a rating of "3" out of a possible "5" for the 2017 performance year. *Id.* ¶ 192; *see id.* ¶ 197. This rating generally precludes Doe

3

from advancing beyond the GS-14 level and thus obtaining a job for which prior experience at the GS-15 level is a prerequisite.  *Id.* ¶ 195.  It also caused Doe to receive "a much smaller performance rating cash bonus."  *Id.* ¶ 200.

Based on these allegations, Doe filed this lawsuit on April 30, 2019, Dkt. 1, and filed the Second Amended Complaint on October 31, 2019, Dkt. 30.  In Counts I and II, Doe brings two FOIA claims not at issue here against the Department of Defense.  2d. Am. Compl. ¶¶ 205–216.  In Count III, Doe asserts an APA claim against the Department of Defense and Secretary of Defense Mark T. Esper.  *Id.* ¶¶ 217–223.  Doe claims that Instruction 563 was inconsistent with Executive Order 13,587 and thus was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see* 2d Am. Compl. ¶¶ 217–23.  In Count IV, Doe asserts a *Bivens* claim against Benoit for alleged First Amendment violations.  *Id.* ¶¶ 224–272.  And in Count V, Doe raises a *Bivens* claim against Benoit and the ten John Doe defendants for alleged Fifth Amendment violations.  *Id.* ¶¶ 273–300.  Before the Court is the government's Motion to Dismiss Counts III, IV, and V and to Strike portions of the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1)–(6) and 12(f).  Gov't's Mot. to Dismiss in Part and to Strike ("Gov't's Mot.") at 1, Dkt. 32.

## II.   LEGAL STANDARDS

### A.   Motion to Dismiss

Rule 12(b)(2) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint when the court lacks personal jurisdiction over the defendant.  Fed. R. Civ. P. 12(b)(2).  "On such a motion, the plaintiff bears the burden of 'establishing a factual basis for the exercise of personal jurisdiction' over each defendant."  *Triple Up Ltd. v. Youku Tudou Inc.*, 235 F. Supp. 3d 15, 20 (D.D.C. 2017) (quoting *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456

(D.C. Cir. 1990)). To meet this burden, a plaintiff may not rely on conclusory allegations, *see Triple Up Ltd.*, 235 F. Supp. 3d at 20, but rather "must allege specific facts connecting the defendant with the forum," *Shibeshi v. United States*, 932 F. Supp. 2d 1, 2 (D.D.C. 2013) (internal quotation marks omitted). "Ultimately, the Court must satisfy itself that it has jurisdiction to hear the suit . . . ." *Triple Up Ltd.*, 235 F. Supp. 3d at 20–21 (internal quotation marks and citations omitted).

Rule 12(b)(3) of the Federal Rules of Civil Procedure allows a party to move to dismiss an action or claim for improper venue. Fed. R. Civ. P. 12(b)(3). Similarly, the federal venue statute, 28 U.S.C. § 1406(a), requires a court to "dismiss, or if it be in the interest of justice, transfer" a case that has been filed "in the wrong division or district." 28 U.S.C. § 1406(a). On a Rule 12(b)(3) motion, the moving party "must provide sufficient specificity to put the plaintiff on notice" of the potential defect, but "the burden remains on the plaintiff to establish that venue is proper." *McCain v. Bank of Am.*, 13 F. Supp. 3d 45, 51 (D.D.C. 2014) (internal quotation marks omitted), *aff'd sub nom. McCain v. Bank of Am. N.A.*, 602 F. App'x 836 (D.C. Cir. 2015).

When ruling on a Rule 12(b)(3) motion, "the Court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Herbert v. Sebelius*, 925 F. Supp. 2d 13, 17 (D.D.C. 2013). But the Court need not "accept the plaintiff's legal conclusions as true," *Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011), or draw inferences unsupported by the specific factual allegations in the complaint, *Herbert*, 925 F. Supp. 2d at 17. In determining whether venue is proper, the Court may "consider material outside the pleadings, including undisputed facts evidenced in the record." *Wilson*, 770 F. Supp. 2d at 190

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P.

12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A plaintiff's well-pleaded factual allegations are "entitled to [an] assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). And the court construes the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotation marks omitted).

### B. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). It is a "drastic remedy that courts disfavor." *Riddick v. Holland*, 134 F. Supp. 3d 281, 285 (D.D.C. 2015). But the decision whether to strike ultimately lies with the district court's discretion. *See Bey v. Washington Metro. Area Transit Auth.*, 341 F. Supp. 3d 1, 11 (D.D.C. 2018).

## III. ANALYSIS

### A. Motion to Dismiss Count III

Count III challenges Instruction 563 based on its alleged incompatibility with Executive Order 13,587. *See* 2d Am. Compl. ¶¶ 217–23. The government moves to dismiss Count III on mootness grounds and for failure to state a claim upon which relief can be granted. Gov't's Mem. in Supp. of Mot. to Dismiss ("Gov't's Mem.") at 27–30, Dkt. 32.

The Court rejects the government's mootness arguments. Though Instruction 563 no longer governs the insider threat process, *see* 2d Am. Compl. ¶ 202, Doe has alleged "continuing adverse consequences from the challenged" instruction, *Anyanwutaku v. Moore*, 151 F.3d 1053,

6

1057 (D.C. Cir. 1998), such as stigma-based and reputational harms. And the relief that Doe seeks—a declaration that Instruction 563 was unlawful and an order to expunge the records related to the insider threat investigation against Doe—is reasonably likely to offer meaningful relief from those injuries. Count III thus is not moot.

That said, because neither the Executive Order nor the APA gives Doe the right to enforce the Executive Order, the Court accepts the government's argument that Count III fails to state a claim for which relief can be granted.

Doe may not enforce the Executive Order directly. To begin, it expressly declines to create any independent, privately enforceable rights. It says: "This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." 76 Fed. Reg. 63811, 63815. This language plainly shows that "[t]he President did not undertake to create any role for the judiciary in the implementation of this policy." *Manhattan-Bronx Postal Union v. Gronouski*, 350 F.2d 451, 456 (D.C. Cir. 1965).

And in any event, this Circuit has "declared that executive orders without specific foundation in congressional action are not judicially enforceable in private civil suits." *In re Surface Min. Regulation Litig.*, 627 F.2d 1346, 1357 (D.C. Cir. 1980); *accord Chen Zhou Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995); *Facchiano Constr. Co. v. U.S. Dep't of Labor*, 987 F.2d 206, 210 (3d Cir.). Doe does not assert that Executive Order 13,587 has a specific foundation in congressional action. To the contrary, Doe alleges that "[t]he impetus for Executive Order 13,587 were [Edward] Snowden's and [Chelsea] Manning's leaks of classified information," 2d Am. Comp. ¶ 17, and that "[b]oth Republican and Democratic Senators were afraid that federal officials could misuse the Insider Threat Program" established under the

7

Executive Order, *id.* ¶ 19.  For its part, the Executive Order mentions no particular congressional foundation.  *See* 76 Fed. Reg. at 63811–15.

Nor may Doe enforce the Executive Order indirectly through the APA.  The APA precludes judicial review when (among other circumstances) "there is no law to apply" in evaluating the challenged agency action.  *Citizens to Pres. Overton Park v. Volpe*, 401 U.S. 402, 410 (1971).  An executive order is "accorded the force and effect of a statute"—is *law*—when it "has a distinct statutory foundation."  *Ass'n for Women in Sci. v. Califano*, 566 F.2d 339, 344 (D.C. Cir. 1977); *see also Nat'l Wildlife Fed'n v. Babbitt*, No. 88-cv-0301, 1993 WL 304008, at *8 (D.D.C. July 30, 1993) (holding that this is one of two requirements for reviewing agency compliance with an executive order).  But as explained, Doe has identified no distinct statutory foundation for this Executive Order.  Nor does it appear to have one, resting instead on the President's constitutionally derived authority to safeguard classified national security information.  *See* 76 Fed. Reg. at 63,811.  In addition, the Executive Order's refusal to create legally enforceable rights, along with its caveat that it does not impair or affect "the authority granted by law to an agency, or the head thereof," further show that it lacks the force of law.  *Id.* at 63,815.

This holding is not contrary to Doe's principal supporting authority, *Sherley v. Sebelius*, 776 F. Supp. 2d 1 (D.D.C. 2011).  Doe is correct that *Sherley* included an APA claim and an executive order that disclaimed the creation of rights or remedies and arguably lacked a distinct statutory foundation.  *See id.* at 21–22.  But the similarities end there.  The APA claim alleged that in promulgating a rule under the executive order, the agency had "violated the APA's notice-and-comment requirements."  *Id.* at 21.  Yet unlike Doe, the plaintiffs in *Sherley* did not challenge this rule as contrary to the executive order itself.  *See id.*  The Court thus did not

8

consider whether a challenge like Doe's could succeed.  *See id.* at 21–22.  The Court referenced the executive order only to determine what rule the President had directed the agency to promulgate.  *See id.* at 22.  This information was relevant to understanding the scope of the agency's proposed rulemaking and thus the extent of the agency's notice-and-comment obligations.  *See id.*  For these reasons, *Sherley* is inapposite.  Indeed, in recently dismissing an APA challenge for failing to state a claim, this Court observed that "there is no private right of action to enforce obligations imposed on executive branch officials by executive orders."  *Jafari v. Pompeo*, No. 1:19-cv-1819, 2020 WL 2112056, at *4 (D.D.C. May 3, 2020) (quoting *Chai v. Carroll*, 48 F.3d 1331, 1338 (4th Cir. 1995)).

This Executive Order is "policy by the President for the guidance of federal employing agencies."  *Manhattan-Bronx Postal Union*, 350 F.2d at 456.  Doe may sincerely believe that Instruction 563 is "contrary to the President's wishes" expressed in the Executive Order.  *Id.* at 457.  But such complaints must be directed "not to the judicial branch" but to the political branches.  *Id.*  This Court's functions "do not include policing the faithful execution of Presidential policies by Presidential appointees."  *Id.*  For all these reasons, the Court will dismiss Count III.

      B.      **Motion to Dismiss Counts IV and V**

Count IV asserts *Bivens* claims against Benoit, and Count V asserts other *Bivens* claims against Benoit and the ten John Doe defendants.  The government moves to dismiss these claims for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted.  *See* Gov't's Mem. at 3.

The Court lacks personal jurisdiction over Benoit and the John Doe defendants.  Doe appears to concede these defendants are not District of Columbia residents.  *See* Pl.'s Am. Mem.

in Opp'n ("Pl.'s Opp'n") at 4, Dkt. 46.  Doe therefore must establish that exercising personal jurisdiction over these defendants would square with the District of Columbia's long-arm statute and with constitutional due process requirements.  *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000) (holding that this "two-part inquiry" is a prerequisite to establishing personal jurisdiction over nonresidents).  Doe falls short on both counts.

The District of Columbia's long-arm statute does not permit this Court to exercise personal jurisdiction over Benoit or the John Doe defendants.  Of that statute's several jurisdictional hooks, Doe cites only one: personal jurisdiction based on "claim[s] for relief arising from the person's . . . transacting any business in the District of Columbia."  D.C. Code § 13-423(a)(1).  As for Benoit, Doe claims that Benoit's flights to Reagan National Airport and activities at the Pentagon count as such business.  *See* Pl.'s Opp'n at 5.  But under the District's long-arm statute, not all business in the District creates personal jurisdiction—the plaintiff's claims must have *arisen from* that business.  *See* D.C. Code § 13-423(a)(1).  Here, Doe asserts no connection between Counts IV and V and Benoit's alleged activities at the Pentagon.  *See* Pl.'s Opp'n at 5.  What is more, Doe admits that the Pentagon sits entirely within Arlington, Virginia.  *Id.* at 3.  This Court has said often and always that "the Pentagon is located in Arlington, Virginia," even though the Pentagon has a District of Columbia mailing address.  *Chin-Young v. Esper*, No. 18-cv-2072, 2019 WL 4247260, at *5 (D.D.C. Sept. 6, 2019); *see also, e.g.*, *Jones v. Hagel*, 956 F. Supp. 2d 284, 288 n.3 (D.D.C. 2013).  Doe does not argue that Reagan National Airport is located in the District of Columbia for the plain reason that it too is located in Arlington, Virginia.  *See Winmar Constr., Inc. v. JK Moving & Storage, Inc.*, 291 F. Supp. 3d 88, 90 (D.D.C. 2018).  As for the John Doe defendants, Doe has little to say other than "[t]his court likewise has personal jurisdiction over John Does Nos. 1–10" because they "continue to assist" Benoit.  Pl.'s

10

Opp'n at 6.  This conclusory statement falls well short of establishing that the John Doe defendants transacted business in the District of Columbia.  Doe thus has not established that the District of Columbia's long-arm statute authorizes this Court to exercise personal jurisdiction over Benoit or the John Doe defendants.

The Constitution also prevents this Court from exercising personal jurisdiction over these defendants because Doe has alleged *no* contacts between these defendants and the District of Columbia, let alone the "continuous and systematic" minimum contacts necessary for exercising personal jurisdiction without offending "traditional notions of fair play and substantial justice." *International Shoe v. Washington*, 326 U.S. 310, 316, 317 (1945).  Doe's only response boils down to this conclusory sentence: "To the extent that [Benoit's] persistent course of conduct occurs in the District of Columbia, we ask this Court to find [her] conduct in this District sufficient to establish personal jurisdiction."  Pl.'s Opp'n at 5–6.  This response fails to meet the Constitution's demands.

Doe's two remaining responses are similarly unpersuasive.  *First*, Doe argues that the defendants "waived any objections to personal jurisdiction and venue in a settlement agreement" executed earlier with Doe.  *Id.* at 6.  ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

*Second*, Doe suggests that because the Insider Threat Report ultimately was published in a nationwide personnel database, Benoit has sufficient minimum contacts with this District.  *See* Pl.'s Opp'n at 14.  Yet the Circuit rejected a version of this argument in *Reuber v. United States*, concluding that "the mere fact that this [information] ultimately found its way to [the District of Columbia] . . . 'is far too attenuated a contact to justify the District's exercise of *in personam* jurisdiction over the defendants.'"  750 F.2d 1039, 1050 (D.C. Cir. 1984) (quoting *World-Wide*

11

*Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)) (alterations adopted).  And this Court agrees that basing personal jurisdiction on such a weak connection between the defendant and this District would offend "traditional notions of fair play and substantial justice." *International Shoe*, 326 U.S. at 316.  For all these reasons, the Court lacks personal jurisdiction over these defendants as to Counts IV and V.

This Court is also an improper venue for these counts.  A proper venue would be a judicial district where "any defendant resides, if all defendants are residents of the State in which the district is located," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(1)–(2).  If no such district exists, then "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action" is proper.  *Id.* § 1391(b)(3).  The District of Columbia is none of the above.  As mentioned, Doe does not claim that these defendants reside in the District of Columbia.  Doe's claims substantially arose either in Massachusetts or Virginia, not the District of Columbia.  And as explained, Benoit and the John Doe defendants are not subject to this Court's personal jurisdiction.  The Court is thus an improper venue for Counts IV and V.

Because the Court lacks personal jurisdiction over these defendants and because venue is improper for Counts IV and V, the Court declines to consider the government's Rule 12(b)(6) motion as to these counts.  *See Arrowsmith v. United Press Int'l*, 320 F.2d 219, 221 (2d Cir. 1963) (Friendly, J.) (observing that a court "without [personal] jurisdiction lacks power to dismiss a complaint for failure to state a claim").

That leaves Doe's request to sever these counts and transfer them to the District of Massachusetts instead of dismissing them.  *See* Pl.'s Opp'n at 6.  The government opposes

transfer on the ground that the claims are so insubstantial that transfer would not be "in the interests of justice" under 28 U.S.C. § 1406(a).  *See* Gov't's Reply at 5, Dkt. 49.  The Court has the "power" to take this approach, *Simpkins v. District of Columbia*, 108 F.3d 366, 370 (D.C. Cir. 1997), but it will not do so.  As explained, because the Court lacks personal jurisdiction over these defendants and because venue is improper, the Court declines to evaluate the merits of Doe's *Bivens* claims.  In addition, Doe asserts (and the government does not contest) that certain statutes of limitations would preclude Doe from refiling some or all of these *Bivens* claims in another court if this Court were to dismiss them.  *See* Pl.'s Opp. at 8; *see generally* Gov't's Reply.  For all these reasons, the Court concludes that it is in the interests of justice to sever Counts IV and V and transfer them to the District of Massachusetts.

    **C.**    **Motion to Strike**

The government moves to strike paragraphs 4–5, 7–204, and 224–300 from the Second Amended Complaint.[1]  Gov't's Mot. at 2 n.3.  The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *see also Wiggins v. Phillip Morris*, 853 F. Supp. 457, 457–58 (D.D.C. 1994) (striking material that was irrelevant and reflected poorly on nonparties).  With Count III dismissed and Counts IV and V transferred, all that will remain here are two FOIA claims.  The Second Amended Complaint now contains numerous paragraphs that are "immaterial" to those

---

[1] Though Doe has filed no motion to strike, Doe's opposition asks the Court to strike Exhibit 1 of the government's motion to dismiss under Rule 12(f).  *See* Pl.'s Opp. at 36.  The Court declines to do so.  Rule 12(f) authorizes the Court to strike material from "pleadings" only, and a motion to dismiss is not a pleading.  *See* Fed. R. Civ. P. 7(a) (listing pleadings as a complaint and an answer); *see, e.g.*, *Henok v. Chase Home Fin., LLC*, 925 F. Supp. 2d 46, 52–53 (D.D.C. 2013) (holding that "motions, affidavits, briefs and other documents are outside of the pleadings and are not subject to being stricken" (internal quotation marks omitted)).

claims.  Doe's only arguments against dismissing those paragraphs depend Counts III, IV, and V remaining here.  *See* Pl.'s Opp'n at 30–35.

In addition, many of the same paragraphs contain information that is "impertinent" or "scandalous."  For example, they accuse various nonparties of: playing computer games at work, 2nd Am. Compl. at ¶¶ 20–22; violating professional bar rules by illegally using a parking placard for people with disabilities, *id.* ¶¶ 31–41; running an eBay business at work, *id.* ¶ 29–30; engaging in improper personal relationships, *id.* ¶¶ 74–80; and watching online videos that disparage African-Americans, *id.* ¶¶ 53–54.  One set of paragraphs details how one nonparty's spouse left her for another woman and her efforts to identify her former spouse's new romantic partners.  *Id.* ¶¶ 45–48.  A different set of paragraphs criticizes another nonparty's skills in contract law.  *Id.* ¶¶ 125–35.  And one paragraph discloses a nonparty's Post Traumatic Stress Disorder.  *Id.* ¶ 155.

For these reasons, the Court exercises its discretion under Rule 12(f) to strike paragraphs 20–107 and 155 from the Second Amended Complaint.  The Court declines the government's request to strike paragraphs 4–5, 7–19, 108–154, 156–204, and 224–300.  Though these paragraphs are irrelevant to Doe's remaining claims, they do not contain information so "impertinent" or "scandalous" as to overcome the general presumption against the Court's exercising its Rule 12(f) discretion.

**CONCLUSION**

For the reasons given above, the Court will grant in part and deny in part the government's Motion to Dismiss in Part and to Strike. The Court will dismiss Count III with prejudice. The Court will sever Counts IV and V and transfer them to the District of Massachusetts. And the Court will strike paragraphs 20–107 and 155 from the Second Amended Complaint. A separate order consistent with this decision accompanies this opinion.

June 29, 2020

DABNEY L. FRIEDRICH
United States District Judge